Approved: _____
          Rushmi Bhaskaran / Peter J. Davis
          Assistant United States Attorneys

Before:   HONORABLE DEBRA FREEMAN
          United States Magistrate Judge
          Southern District of New York

-----------------------------------x
                                   :    20 MAG 12114
UNITED STATES OF AMERICA           :    COMPLAINT
                                   :
        - v. -                     :    Violation of 21 U.S.C.
                                   :    § 846
JORGE ESPINO HERNANDEZ, and        :
PABLO VALTIERRA MATA,              :    COUNTY OF OFFENSE:
                                   :    MANHATTAN, BRONX
            Defendants.            :
                                   :
-----------------------------------x

STATE OF NEW YORK          ) ss:
SOUTHERN DISTRICT OF NEW YORK )

        CHRISTIAN GARCIA, being duly sworn, deposes and says
that he is a Special Agent with the Drug Enforcement Administration
("DEA"), and charges as follows:

COUNT ONE
(Narcotics Conspiracy)

        1.   From at least in or about October 2020, up to and
including in or about November 2020, in the Southern District of
New York and elsewhere, JORGE ESPINO HERNANDEZ and PABLO VALTIERRA
MATA, the defendants, and others known and unknown, intentionally
and knowingly did combine, conspire, confederate, and agree
together and with each other to violate the narcotics laws of the
United States.

        2.   It was a part and an object of the conspiracy that JORGE
ESPINO HERNANDEZ and PABLO VALTIERRA MATA, the defendants, and
others known and unknown, would and did distribute and possess
with intent to distribute a controlled substance, in violation of
Title 21, United States Code, Section 841(a)(1).

        3.   The controlled substance that JORGE ESPINO HERNANDEZ and
PABLO VALTIERRA MATA, the defendants, conspired to distribute and
possess with intent to distribute was 500 grams and more of

1

mixtures and substances containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge of the foregoing charge are, in part, as follows:

4.    I am a Special Agent with DEA and I have been personally involved in the investigation of this matter.   This affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals.   Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation.   Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5.    Based on my participation in this investigation, my review of law enforcement records and reports, and my conversations with other law enforcement officers, I am aware of the following, in substance and in part:

a.    Beginning at least on or about October 30, 2020, a DEA confidential source ("CS-1"),[1] communicated by phone with an individual believed to be located in Mexico ("CC-1") regarding CS-1's purchase of approximately five kilograms of methamphetamine from CC-1 and CC-1's associates.   CS-1 recorded these communications.[2]

b.    On or about November 1, 2020, during a call, CC-1 informed CS-1, in substance and in part, that CC-1 would direct another individual, later identified as described below as JORGE

---

[1] On or about December 10, 2019, CS-1 was charged with federal narcotics offenses.   Since approximately December 10, 2019, CS-1 has been providing information to law enforcement in hopes of receiving leniency in connection with that case.   Information provided by CS-1 has proven reliable and has been corroborated by, among other things, electronic messages and events independently observed by law enforcement.

[2] The communications between CS-1 and CC-1 have been in Spanish, and because I am a fluent Spanish speaker, I have been able to review them.

ESPINO HERNANDEZ, the defendant, to provide CS-1 with approximately five kilograms of methamphetamine on consignment. CS-1 informed CC-1, in substance and in part, that CS-1 would meet HERNANDEZ at a hotel ("Hotel-1") in Fort Lee, New Jersey on November 2, 2020 to receive the drugs.

       c.    On at least one of the calls between CS-1 and CC-1, CS-1 was located in Manhattan, New York.  In communications between CS-1 and CC-1, CS-1 explained to CC-1, in substance and in part, that CS-1 would be driving from Manhattan to the meeting with HERNANDEZ.  CS-1 also informed CC-1, in substance and in part, that CS-1 would "cross the bridge" to sell the methamphetamine to obtain the money to pay HERNANDEZ for the transaction.  Based on my participation in this investigation, and on my training and experience, I have learned that the bridge near Hotel-1 is the George Washington Bridge connecting New Jersey to Manhattan, and I understand CS-1 to have been conveying to CC-1 that the drugs distributed by CC-1 and his associates would be sold in and around New York City.

       d.    On or about November 2, 2020, at approximately 12:00 p.m., CS-1 drove to the vicinity of Hotel-1 in Fort Lee, New Jersey to conduct the methamphetamine transaction.  Law enforcement surveilled Hotel-1 and observed three vehicles with out-of-state license plates arrive at a second hotel down the street from Hotel-1 ("Hotel-2") and park in Hotel-2's parking lot. Law enforcement observed HERNANDEZ, an individual later identified as described below as PABLO VALTIERRA MATA, the defendant, and individuals later identified as Jenny Fernandez Nataren and Jose Herrera,[3] exit the vehicles, unpack luggage from the vehicles, and enter Hotel-2 as a group.

       e.    Shortly thereafter, at approximately 12:30 p.m., law enforcement observed HERNANDEZ exit Hotel-2 wearing a white jacket and carrying a black backpack ("Bag-1").  Law enforcement also observed MATA, who was wearing distinctive gold-colored sneakers, and Nataren exit Hotel-2 and walk toward a nearby gas

_____

[3] As set forth below, Nataren and Herrera have been arrested and charged by complaint in connection with the narcotics trafficking activity described herein involving Nataren, Herrera, and JORGE ESPINO HERNANDEZ and PABLO VALTIERRA MATA, the defendants, among others. *See United States v. Nataren and Herrera*, 20 Mag. 11874 (S.D.N.Y. Nov. 4, 2020) (the "Nataren and Herrera Complaint"). HERNANDEZ and MATA are referred to as "CC-2" and "CC-3", respectively, in the Nataren and Herrera Complaint.

station ("Gas Station-1").  Around this time, CC-1 informed CS-1 by phone, in substance and in part, that HERNANDEZ was waiting for CS-1 at Hotel-2, and that CS-1 should drive to Hotel-2 to meet HERNANDEZ.   Shortly thereafter, law enforcement observed CS-1 drive to Hotel-2 and stop his vehicle in front of HERNANDEZ.  Law enforcement then observed HERNANDEZ place Bag-1 inside of CS-1's vehicle.   After retrieving Bag-1 from CS-1, law enforcement subsequently searched Bag-1, which held two plastic containers filled with a white substance and weighing approximately three kilograms, as pictured below.  Law enforcement field-tested the substances in Bag-1 and the substances tested positive for methamphetamine.



f.   While HERNANDEZ was placing Bag-1 in CS-1's vehicle, law enforcement observed MATA and Nataren standing outside of Gas Station-1 and watching the transaction.   MATA appeared to remain on his cellphone for the entirety of the transaction and, once the transaction was completed, MATA ended his phone call.  MATA and Nataren then approached and spoke with HERNANDEZ.  Based on my participation in this investigation, and on my training and experience, I believe that MATA and Nataren were conducting counter-surveillance for the narcotics transaction in coordination with HERNANDEZ.

g.   After the transaction, law enforcement observed Nataren and an individual later identified as Nataren's husband ("Individual-1") travel to Hotel-1, *i.e.*, the original agreed-upon location for the methamphetamine transaction.   Law enforcement detained Nataren and Individual-1 when they arrived at Hotel-1. Law enforcement advised Nataren of her *Miranda* rights, which she waived.   Nataren agreed to speak with law enforcement.   Nataren informed law enforcement, in substance and in part, that Nataren had left another package of methamphetamine in the women's bathroom

of Hotel-1 for another buyer.[4]  Law enforcement then searched the women's bathroom at Hotel-1 and recovered two plastic containers, which appeared similar to the containers in Bag-1.  Those containers held approximately three kilograms of a substance that field-tested positive for methamphetamine.

h.   Nataren further informed law enforcement, in substance and in part, that HERNANDEZ and MATA were methamphetamine traffickers.  Nataren also provided law enforcement with consent to search her cellphone and identified a phone number for MATA (the "Mata Phone Number").  Individual-1 also provided law enforcement with consent to search his cellphone and identified a phone number for HERNANDEZ (the "Hernandez Phone Number," and together with the Mata Phone Number, the "Hernandez and Mata Phone Numbers"). The Hernandez Phone Number was saved in Individual-1's contacts under the name "Jorg," *i.e.*, a shortened version of the first name of HERNANDEZ.

i.   At around this time, Herrera was arrested while attempting to drive away from law enforcement in one of the vehicles that had arrived earlier in the day shortly before the drug deal ("Vehicle-1").  Law enforcement searched Vehicle-1 and found, among other things, a Mexican identification card for "Jorge Espino Hernandez," which contains a photograph that appears, based on the observations of the surveilling agents, to depict the individual who provided Bag-1 to CS-1, *i.e.*, JORGE ESPINO HERNANDEZ, the defendant.

j.   In or about the evening of November 2, 2020 (*i.e.*, approximately a few hours after the methamphetamine transaction described above), CS-1 sent CC-1 a photograph depicting bundles of U.S. currency, and informed CC-1, in substance and in part, that CS-1 had the money to pay CC-1 for the methamphetamine that had been provided to CS-1 on consignment.  CC-1 told CS-1, in substance and in part, that CS-1 should provide the money to the individual who had provided CS-1 with the methamphetamine—*i.e.*, HERNANDEZ—in the Bronx, New York later that evening.

k.   On or about that same day, November 2, 2020, the Honorable Stewart D. Aaron, United States Magistrate Judge for the Southern District of New York, issued a warrant (the "November 2 Warrant") for law enforcement to obtain prospective and historical

---

[4] Nataren later informed law enforcement, in substance and in part, that before the events described above she had observed vehicles that she suspected to be law enforcement or a robbery crew and had placed the methamphetamine in the bathroom at Hotel-1 in an effort to hide the drugs.

location information for the Hernandez and Mata Phone Numbers. Based on my discussions with other law enforcement officers, and my review of the historical location information for the Hernandez and Mata Phone Numbers, I have learned that those cellphones were located in or around the Bronx on the evening of November 2, 2020, which I believe, based on my training, experience, and participation in this investigation, further indicates that those cellphones are used by HERNANDEZ and MATA.

l.     On or about November 10, 2020, Judge C. Winston Gilchrist, Superior Court of North Carolina, authorized law enforcement agents to use a cell-site simulator (the "CSS Warrant") to determine the location of the Hernandez Phone.

m.     On or about the morning of November 12, 2020, location information obtained pursuant to the November 2 Warrant and CSS Warrant indicated that the Hernandez Phone was located in the vicinity of a mobile home ("House-1") in Sanford, North Carolina. When I and other law enforcement officers knocked on the door of House-1, an individual answered the door and allowed us to enter House-1.  Upon entering, I saw MATA, who was wearing the same distinctive sneakers that he was observed wearing on November 2, 2020, and asked him to exit House-1.  Once he did, MATA was placed under arrest, and law enforcement found an identification card for "Pablo Valtierra Mata," which contains a photograph that appears to be MATA, on MATA's person. Based on my involvement in this investigation, including my surveillance of MATA on November 2, 2020, and my participation in MATA's arrest on the morning of November 12, 2020, I recognize the person who answered the door at House-1 on November 12, 2020 to be the same person whom law enforcement surveilled on November 2, 2020 in connection with the methamphetamine transaction in New Jersey described above, *i.e.*, MATA.  After being provided with his *Miranda* rights and waiving those rights, MATA admitted, in substance and in part, that he had recently been in New Jersey with his girlfriend at a hotel, and claimed that he had fled when he believed that law enforcement agents were conducting immigration-related arrests.

n.     At or around the time that MATA was placed under arrest, HERNANDEZ exited House-1 and was also placed under arrest. Based on my involvement in this investigation, including my surveillance of HERNANDEZ on November 2, 2020, I recognize the person who exited House-1 after MATA was arrested to be HERNANDEZ.

WHEREFORE, I respectfully request that JORGE ESPINO HERNANDEZ and PABLO VALTIERRA MATA, the defendants, be imprisoned, or bailed, as the case may be.


s/Christian Garcia, by the Court, with permission
                CHRISTIAN GARCIA
                Special Agent
                Drug Enforcement Administration


Sworn to me through the transmission of this Complaint
by reliable electronic means (FaceTime), pursuant to
Federal Rule of Criminal Procedure 4.1, this
12th day of November, 2020


THE HONORABLE DEBRA FREEMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK